UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| Emanuel Collier, | |
| *On behalf of himself and those similarly situated*, | Case No. |
| Plaintiff, | Judge |
| v. | |
| Hut American Group LLC; Flynn Restaurant Group LP; Doe Corporation 1-10; and John Doe 1-10; | Jury Demand Endorsed Hereon |
| Defendants. | |

## CLASS AND COLLECTIVE ACTION COMPLAINT

1.      Emanuel Collier, on behalf of himself and similarly-situated individuals, brings this action against Defendants Hut American Group LLC; Flynn Restaurant Group LP; Doe Corporation 1-10; and John Doe 1-10 ("Defendants"). Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff and similarly-situated individuals as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.* ("IMWL"), the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, *et seq.* ("IWPCA"), and for unjust enrichment.

2.      Defendants own and operate multiple Pizza Hut Pizza locations in Illinois and around the country ("Defendants' Pizza Hut stores").

3.      Plaintiff seeks to represent the delivery drivers who have worked at the Defendants' stores.

4.      Defendants repeatedly and willfully violated the Fair Labor Standards Act, the IMWL, and IWPCA by failing to adequately reimburse delivery drivers for their delivery-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wages for all hours worked.

## Jurisdiction and Venue

5.      All delivery drivers at the Defendants' stores, including Plaintiff, have been subject to the same or similar employment policies and practices.

6.      Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiffs' FLSA claims.

7.      Venue in this Court is proper under 28 U.S.C. § 1391(b) because Defendants reside in this district, and a substantial part of the events giving rise to the claim herein occurred in this district.

## Parties

**Plaintiff**

**Emanuel Collier**

8.      Plaintiff Emanuel Collier is a resident of Springfield, Illinois.

9.      Plaintiff was an "employee" of all Defendants as defined in the FLSA, the IMWL, and the IWPCA.

10.      Plaintiff has given written consent to join this action.

**Defendants**

11.    Each of the Defendants had control over Plaintiff and similarly situated employees' working conditions.

12.    At all relevant times, Defendants have shared or co-determined those matters governing the essential terms and conditions of employment for Plaintiff and similarly situated employees at Defendants' Pizza Hut stores.

13.    At all relevant times, Defendants have had direct or indirect control over the terms and conditions of Plaintiff's work and the work of similarly situated employees.

14.    At all relevant times, Defendants possessed the authority to control the terms and conditions of Plaintiff's employment and the employment of similarly situated employees and have exercised that authority.

**Hut American Group LLC**

15.    At all relevant times, Defendants possessed the authority to control the terms and conditions of Plaintiff's employment and the employment of similarly situated employees and have exercised that authority.

16.    Defendant Hut American Group LLC is a Delaware limited liability company doing business in Illinois.

17.    Hut American Group LLC operates the Defendants' Pizza Hut stores.

18.    Hut American Group LLC is owned and operated by Flynn Restaurant Group LP.

19.    Hut American Group LLC is the entity that appears on Plaintiff's paystubs for work he completes for Defendants' Pizza Hut stores.

20.    Hut American Group LLC has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

21.    Hut American Group LLC has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

22.    Hut American Group LLC maintains control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

23.    Hut American Group LLC is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

24.    Hut American Group LLC had been an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

25.    Hut American Group LLC's gross revenue exceeds $500,000 per year.

**Flynn Restaurant Group LP**

26.    Defendant Flynn Restaurant Group LP is a Delaware limited liability company doing business in Illinois.

27.    Flynn Restaurant Group LP owns and operates the Defendants' Pizza Hut stores.

28.    Flynn Restaurant Group LP owns and operates Hut American Group LLC.

29.    Flynn Restaurant Group LP has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

30.    Flynn Restaurant Group LP has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

31.    Flynn Restaurant Group LP maintains control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

32.    Flynn Restaurant Group LP is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

33.    Flynn Restaurant Group LP had been an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

34.    Flynn Restaurant Group LP's gross revenue exceeds $500,000 per year.

**Doe Corporation 1–10**

35.    Upon information and belief, Defendants own, operate, and control other entities and/or limited liability companies that also comprise part of the Defendants' Pizza Hut stores, and qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Pizza Hut stores as that term is defined by the FLSA.

36.    Upon information and belief, Defendants and/or their individual owners own and operate a number of other entities that make up part of the Defendants' Pizza Hut operation.

37.    Upon information and belief, the franchisor, Pizza Hut Pizza, may also be liable as an employer of the delivery drivers employed at Defendants' Pizza Hut stores.

The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**John Doe 1–10**

38.     Upon information and belief, there are additional individuals who also qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Pizza Hut stores as that term is defined by the FLSA.

39.     Upon information and belief, a number of the individual managers and owners of Defendants might also qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Pizza Hut stores as that term is defined by the FLSA.

40.     Upon information and belief, Jeremy Biser, Greg Flynn, Ron Bellamy, Michael Hallman, Lorin Cortina, Adam van Horn, Aaron Kirkman, Richard Wykes, Jennifer Zika are such additional individuals who may also qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Pizza Hut stores as that term is defined by the FLSA.

41.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

## FACTS

### Class-wide Factual Allegations

42.     During all relevant times, Defendants have operated the Defendants' Pizza Hut stores.

43.     Plaintiff and the similarly situated persons Plaintiff seeks to represent are current and former delivery drivers at the Defendants' Pizza Hut stores.

44.     All delivery drivers employed at the Defendants' Pizza Hut stores over the last ten years have had essentially the same job duties.

6

45.     The delivery drivers at the Defendants' Pizza Hut stores worked dual jobs, one where they completed deliveries and received tips, and another when they helped inside the store and did not receive tips.

46.     When there are no deliveries to make, Defendants' delivery drivers are required to work inside the Defendants' Pizza Hut stores folding boxes, doing dishes, stocking coolers, mopping and sweeping the floor, taking the trash out, preparing food, and completing other duties inside the restaurant as necessary.

47.     Plaintiff and similarly situated delivery drivers have been paid minimum wage, slightly above minimum wage, or minimum wage minus a tip credit for the hours they worked while delivering Defendants' products to its customers.

48.     Defendants require delivery drivers at the Defendants' Pizza Hut stores to provide cars to use while completing deliveries for Defendants.

49.     Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

50.     Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing charges, licensing and registration costs, cell phone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

51.     Pursuant to such requirements, Plaintiff and other similarly situated employees purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, financing, licensing, and

registration charges, and incur cell phone and data charges all for the primary benefit of Defendants.

52.     Plaintiff and similarly situated delivery drivers receive a per-mile reimbursement payment that is less than the IRS standard business mileage rate.

53.     Defendants' reimbursement payments was not based on the actual expenses incurred by the delivery drivers.

54.     The Defendants' Pizza Hut stores do not track or record the delivery drivers' actual expenses.

55.     The Defendants' Pizza Hut stores do not collect receipts from their delivery drivers related to the automobile expenses they incur.

56.     The Defendants' Pizza Hut stores do not collect receipts of delivery drivers' gasoline purchases during weeks when the delivery drivers worked for Defendants.

57.     The Defendants' Pizza Hut stores do not collect receipts of delivery drivers' automobile maintenance, repair, and parts purchased or paid for during weeks when the delivery drivers worked for Defendants.

58.     The Defendants' Pizza Hut stores do not collect receipts of delivery drivers' monthly or annual automobile insurance costs.

59.     The Defendants' Pizza Hut stores do not collect receipts of delivery drivers' automobile registration costs.

60.     The Defendants' Pizza Hut stores do not collect receipts of delivery drivers' automobile financing or purchase costs.

61.    The Defendants' Pizza Hut stores do not collect any other receipts from delivery drivers related to the automobile expenses they incur as delivery drivers at the Defendants' Pizza Hut stores.

62.    The Defendants' Pizza Hut stores do not reimburse their delivery drivers for the actual expenses delivery drivers incur.

63.    The Defendants' Pizza Hut stores do not reimburse their delivery drivers at the IRS standard business mileage rate.

64.    The Defendants' Pizza Hut stores do not reasonably approximate the delivery drivers' expenses.

65.    The Defendants' Pizza Hut stores' reimbursement payments result in reimbursements that are less than the IRS standard business mileage rate for each mile driven.

66.    According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

    2013: 56.5 cents/mile
    2014: 56 cents/mile
    2015: 57.5 cents/mile
    2016: 54 cents/mile
    2017: 53.5 cents/mile
    2018: 54.5 cents/mile
    2019: 58 cents/mile
    2020: 57.5 cents/mile
    2021: 56 cents/mile
    2022: 58.5 cents/mile and 62.5 cents/mile
    2023: 65.5 cents/mile

67.    The delivery drivers at the Defendants' Pizza Hut stores have incurred even more in expenses than those contemplated by the IRS standard business mileage rate—e.g., cell phone and data charges.

9

68.     The delivery drivers at the Defendants' Pizza Hut stores advance a business expense, interest free, to Defendants when they provide cars to use at work.

69.     Defendants reimbursed their delivery drivers amounts less than they would have had to be pay if they had rented vehicles each day to use to make deliveries.

70.     Defendants reimbursed their delivery drivers amounts less than they would have had to pay to own and maintain a fleet of vehicles to complete their deliveries.

71.     Defendants benefit from the delivery drivers at the Defendants' Pizza Hut stores spending time off the clock repairing and maintaining their vehicles.

72.     Defendants benefit from delivery drivers at the Defendants' Pizza Hut stores taking on the risk of using their vehicles to drive for Defendants' business.

73.     Defendants save substantial insurance costs and exposure to liability by requiring their judgment proof minimum wage workers to take on the risk of accident or injury for them.

74.     Defendants benefit because they do not have to employ additional individuals or expend additional time managing, monitoring, and maintaining a fleet of vehicles.

75.     Defendants benefit from not having to store the delivery drivers' vehicles when they are not in use for business purposes.

76.     Defendants are more easily able to secure loans or financing because the delivery drivers take on the substantial costs associated with providing cars needed to operate their business.

77.     Defendants need less up-front capital because the delivery drivers provide cars to make Defendants' deliveries.

78.     As a result of the automobile and other job-related expenses incurred by Plaintiff and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA and Illinois law.

79.     Defendants have applied the same or similar pay policies, practices, and procedures to all delivery drivers at the Defendants' Pizza Hut stores.

80.     Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. See 29 C.F.R. § 531.35.

81.     Because Defendants failed to adequately reimburse for vehicle expenses incurred for Defendants' benefit, during workweeks when delivery drivers worked more than 40 hours, Defendants failed to pay time and a half overtime at the drivers' reguar rate.

82.     Alternatively, Defendants failure to properly reimburse for vehicle expenses resulted in an illegal diversion of the delivery drivers' tips.

83.     Defendants have willfully failed to pay federal and Illinois state minimum wage to Plaintiff and similarly situated delivery drivers at the Defendants' Pizza Hut stores and have been unjustly enriched by the delivery drivers' incurring automobile expenses for their benefit.

## Plaintiff's Individual Factual Allegations

84.     Plaintiff worked at the Defendant's Pizza Hut stores in Springfield, Illinois from approximately November 2019 to April 2022.

85.     Plaintiff's work hours ranged between 20 and 70 hours per week.

86.    Plaintiff worked dual jobs. One job where Plaintiff was on the road making deliveries and receiving tips, and another job when Plaintiff helps with tasks inside the store and does not receive tips.

87.    Plaintiff was paid minimum wage minus a tip credit for all hours worked on the road making deliveries.

88.    Plaintiff was paid minimum wage for the hours he worked inside the store.

89.    When Plaintiff was not delivering food, he worked inside the restaurant. His work inside the restaurant included doing dishes, cleaning, folding boxes, taking the trash out and completing other duties inside the restaurant as necessary.

90.    Plaintiff was required to use his own car to deliver pizzas.

91.    Plaintiff was reimbursed between $.35 and $.45 per mile for each mile he drove mile making deliveries.

92.    Plaintiff regularly drove approximately 5 miles per round trip delivery.

93.    Plaintiff was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

94.    Plaintiff was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone service, GPS service, automobile financing, licensing and registration costs, and other equipment necessary for delivery drivers to complete their job duties.

95.    Plaintiff has purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage,

automobile financing, licensing and registration costs, and incurred cell phone and data charges all for the primary benefit of Defendants.

96.    Plaintiff had to maintain and store his car while off the clock.

97.    Defendants did not track the actual expenses incurred by Plaintiff.

98.    Defendants did not ask Plaintiff to provide receipts of the expenses he incurred while delivering pizzas for Defendants.

99.    Defendants did not reimburse Plaintiff based on his actual delivery-related expenses.

100.    Plaintiff was not reimbursed at the IRS standard mileage rate for the miles he drove while completing deliveries.

101.    Defendants did not reimburse Plaintiff a reasonably approximate amount of his actual expenses.

102.    Plaintiff regularly made approximately 3 deliveries per hour during the hours he worked as a delivery driver.

103.    In 2022, for example, the IRS business mileage reimbursement was $.585 per mile. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. Using the IRS rate as the proper measure of Plaintiff's automobile expenses, every mile driven on the job decreased his net wages by approximately $.235 ($.585 - $.35) per mile. Considering Plaintiff's estimate of about 5 miles per delivery, Defendants under-reimbursed him about $1.17 per delivery ($.235 x 5 miles).

104.    Defendants failed to properly take a tip credit from Plaintiff's wages because, after accounting for unreimbursed expenses, Defendants had taken more of a tip credit than they informed Plaintiff they would be taking.

13

105.     Defendants failed to pay Plaintiff minimum wage or overtime wages as required by law.

## Collective Action Allegations

106.     Plaintiff brings the First and Second Counts on behalf of himself and

All similarly situated current and former delivery drivers employed at the Defendants' Pizza Hut stores owned, operated, and controlled by Defendants nationwide, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

107.     At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked and failing to reimburse delivery drivers for automobile expenses and other job-related expenses. Plaintiff's claims are essentially the same as those of the FLSA Collective.

108.     Defendants' unlawful conduct is pursuant to a company policy or practice.

109.     Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked and to fully reimburse for "tools of the trade."

110.     Defendants are aware or should have been aware that federal law required them to pay employees time and a half their regular hourly rate during workweeks when they worked more than 40 hours.

111.     Defendants' unlawful conduct has been widespread, repeated, and consistent.

112.     The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

113.     The FLSA Collective members are readily identifiable and ascertainable.

114.     In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

### Class Action Allegations

115.     Plaintiff brings the Third, Fourth, Fifth, and Sixth Counts under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at the Defendants' Pizza Hut stores in the State of Illinois between the date ten years prior to the filing of the original complaint and the date of final judgment in this matter ("Illinois Wage Class").

116.     Plaintiff brings the Seventh Count under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at the Defendants' Pizza Hut stores in the State of Illinois between the date five years prior to the filing of the original complaint and the date of final judgment in this matter ("Unjust Enrichment Class") (Combined with the Illinois Wage Class, the "Rule 23 Classes")

117.     Excluded from the Rule 23 Classes are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Classes.

118.     The number and identity of the Illinois Wage Class members are ascertainable from Defendants' records.

119. The number and identity of the Unjust Enrichment Class members are ascertainable from Defendants' records.

120. The hours assigned and worked, the positions held, deliveries completed, and the rates of pay and reimbursements paid for each member of the Rule 23 Classes are determinable from Defendants' records.

121. All of the records relevant to the claims of members of the Rule 23 Classes should be found in Defendants' records.

122. For the purpose of notice and other purposes related to this action, their names and contact information are readily available from Defendants.

123. Notice can be provided by means permissible under Rule 23.

124. The members of the Rule 23 Classes are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

125. There are more than 50 Illinois Wage Class members.

126. There are more than 50 Unjust Enrichment Class members

127. Plaintiff's claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class member in separate actions.

128. Plaintiff and the members of the Rule 23 Classes were subject to the same practices of Defendants, as alleged herein, of failing to pay minimum wage, untimely payment of wages, and being unjustly enriched by their automobile policy.

129. Plaintiff and the Illinois Wage Class members have all sustained similar types of damages as a result of Defendants' failure to comply with Illinois wage law.

16

130.    Plaintiff and the Unjust Enrichment Class members have all unjustly enriched Defendants in the same way.

131.    Plaintiff and the members of the Rule 23 Classes sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

132.    Plaintiff is able to fairly and adequately protect the interests of the Illinois Wage Class and has no interests antagonistic to the Illinois Wage Class.

133.    Plaintiff is able to fairly and adequately protect the interests of the Unjust Enrichment Class and has no interests antagonistic to the Unjust Enrichment Class.

134.    Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

135.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

136.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

137.    The Illinois Wage Class and the Unjust Enrichment Class are proper treated as subclasses pursuant to Rule 23(c)(5).

138.    Common questions of law and fact exist as to the Illinois Wage Class that predominate over any questions only affecting Plaintiff and the Illinois Wage Class members individually and include, but are not limited to:

    a.    Whether Plaintiff and the Illinois Wage Class members were subject to a common expense reimbursement policy that resulted in wages to drop below legally allowable minimum wage and required time-and-a-half overtime wages;

    b.    Whether Plaintiff and the Illinois Wage Class were subject to a policy that required them to maintain and pay for safe, operable, and legally compliant automobiles to use in completing deliveries;

    c.    Whether Plaintiff and the Illinois Wage Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

    d.    Whether Defendants reimbursed Plaintiff and the Illinois Wage Class members for their actual expenses;

    e.    Whether Defendants reimbursed Plaintiff and the Illinois Wage Class members at the IRS standard business mileage rate for the miles they drove in making deliveries;

    f.    Whether Defendants properly reimbursed Plaintiff and the Illinois Wage Class members;

    g.    Whether Defendants properly claimed a tip credit from the wages of Plaintiff and the Illinois Wage Class;

    h.    Whether Plaintiff and the Illinois Wage Class were actually paid the wage rate they were promised by Defendants;

    i.    The nature and extent of class-wide injury and the measure of damages for those injuries.

139.    In recognition of the services Plaintiff has rendered and will continue to render to the Illinois Wage Class, Plaintiff will request payment of a service award upon resolution of this action.

140.    Common questions of law and fact exist as to the Unjust Enrichment Class that predominate over any questions only affecting Plaintiff and the Unjust Enrichment Class members individually and include, but are not limited to:

  a.  Whether Plaintiff and the Unjust Enrichment Class members were subject to a common policy that required them to provide cars to complete deliveries for Defendants;

  b.  Whether Plaintiff and the Unjust Enrichment Class members were subject to a common automobile expense reimbursement policy;

  c.  Whether Plaintiff and the Unjust Enrichment Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

  d.  Whether Plaintiff and the Unjust Enrichment Class conferred a measurable benefit on Defendants;

  e.  Whether Defendants avoided business expenses and risk they would have otherwise been required to cover but for Plaintiff and the Unjust Enrichment Class providing cars to use to make deliveries;

  f.  How much it would have cost Defendants to operate their business but for Plaintiff and the Unjust Enrichment Class providing cars to use to make deliveries;

  g.  Whether Defendants were aware of the benefit that was being conferred on them by Plaintiff and the Unjust Enrichment Class;

  h.  The nature and extent of class-wide injury and the measure of damages for those injuries.

141.    In recognition of the services Plaintiff has rendered and will continue to render to the Unjust Enrichment Class, Plaintiff will request payment of a service award upon resolution of this action.

## Causes of Action

### Count 1
### Failure to Pay Minimum Wages - Fair Labor Standards Act
### (On Behalf of Plaintiff and the FLSA Collective)

142.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

143.    Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

144.    Defendants paid Plaintiff and the FLSA Collective at or close to minimum wage for all hours worked on the road making deliveries.

145.    Defendants required and continue to require Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket and failed to properly reimburse Plaintiff and the FLSA Collective for said expenses.

146.    Defendants improperly diverted tips from Plaintiff and the FLSA Collective by failing to properly reimburse for their vehicle expenses.

147.    By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

148.    Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

149.    As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

### Count 2
### Failure to Pay Overtime Wages – Fair Labor Standards Act
### (On Behalf of Plaintiff and the FLSA Collective)

150.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

151.     Plaintiff and some members of the FLSA Collective worked more than forty hours in one or more workweeks.

152.     Because Defendants required Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, Defendants did not pay Plaintiff and the FLSA Collective at least one and a half times their normal hourly rate for time worked in excess of forty hours per workweek.

153.     By not paying Plaintiff and the FLSA Collective proper overtime wages for time worked in excess of forty hours in a workweek, Defendants have willfully violated the FLSA.

154.     As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**Count 3**
**Failure to Pay Minimum Wages – Illinois Minimum Wage Law**
**(On Behalf of Plaintiff and the Illinois Wage Class)**

155.     Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

156.     Defendants paid Plaintiff and the Illinois Wage Class below minimum wage for the hours they worked by requiring them to cover automobile expenses and other job-related expenses.

157.     Defendants ostensibly paid Plaintiff and the Illinois Wage Class at or close to minimum wage for the hours they worked.

158.     Because Defendants required Plaintiff and the Illinois Wage Class to pay for automobile expenses and other job-related expenses out of pocket, Defendants failed to pay Plaintiff and the Rule 23 Class minimum wage.

159.    By not paying Plaintiff and the Illinois Wage Class at least minimum wage for each hour worked, Defendants have violated the IMWL.

160.    As a result of Defendants' violations, Plaintiff and the Illinois Wage Class are entitled to unpaid minimum wages, unreimbursed expenses, liquidated damages, unlawful deductions, statutory damages as defined by 820 ILCS 105/12(a), costs, and attorneys' fees and costs.

**Count 4**
**Violation of IMWL – Unpaid Overtime Wages**
**(On Behalf of Plaintiff and the Illinois Wage Class)**

161.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

162.    Plaintiff and some members of the Illinois Wage Class worked more than forty hours in one or more workweeks.

163.    Because they required Plaintiff and the Illinois Wage Class to pay for automobile expenses and other job-related expenses out of pocket, Defendants did not pay Plaintiffs and the Illinois Wage Class at least one and a half times their normal hourly rate for time worked in excess of forty hours per workweek.

164.    By not paying Plaintiffs and the Illinois Class proper overtime wages for time worked in excess of forty hours in a workweek, Defendants have violated the Ill. Stat. § 105/4a.

165.    As a result of Defendants' violations, Plaintiffs and the Illinois Wage Class are entitled to damages, including, but not limited to, unpaid overtime wages, unreimbursed expenses, statutory damages as defined by 820 ILCS 105/12(a), costs, and attorneys' fees.

**Count 5**
**Violation of the IWPCA – Unpaid Wages**

22

**(On Behalf of Plaintiff and the Illinois Wage Class)**

166.     Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

167.     This Count arises from Defendants' practice of failing to pay Plaintiff and the Illinois Wage Class at the wage rate agreed to by the parties.

168.     During the course of Plaintiff's employment, he had an agreement within the meaning of the IWPCA to be compensated for all hours worked at an agreed upon rate.

169.     Other similarly situated employees likewise had an agreement within the meaning of the IWPCA to be compensated for all hours worked at an agreed upon rate.

170.     Defendants had a practice of not paying Plaintiff and the Illinois Wage Class at the rate agreed to by the parties. For example, Defendants took "kickbacks" from the wages of Plaintiff and the Illinois Wage Class and failed to properly reimburse Plaintiff and the Illinois Wage Class for the expenses they incurred while making deliveries on Defendants' behalf.

171.     Plaintiff and the Illinois Wage Class were entitled to be paid for all time worked at the rate agreed to by the parties.

172.     Defendants' practice of failing to pay Plaintiff and the Illinois Wage Class at the rate agreed to by the parties violated the IWPCA.

173.     Plaintiff and the Illinois Wage Class are entitled to recover all the unpaid wages in violation of the IWPCA made from their earned wages for a period of ten (10) years prior to the filing of this lawsuit. See 73 ILCS 5/13-206.

174.     As a result of Defendants' violations of the IWPCA, Plaintiff and the Illinois Wage Class, are entitled to unpaid wages, statutory damages provided under the IWPCA, reasonable attorneys' fees, and costs.

**Count 6**
**Violation of the IWPCA – Unlawful Deductions**
**(On Behalf of Plaintiff and the Illinois Wage Class)**

175.     Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

176.     This Count arises from Defendants' practice of making unlawful deductions from the wages of Plaintiff and the Illinois Wage Class.

177.     During the course of his employment, Plaintiff had an agreement within the meaning of the IWPCA to be compensated for all hours worked at an agreed upon rate.

178.     Other similarly situated employees likewise had an agreement within the meaning of the IWPCA to be compensated for all hours worked at an agreed upon rate.

179.     Defendants had a practice of making unlawful deductions from Plaintiff's earned wages without authorization from Plaintiff in writing as required by the IWPCA. Such deductions: (a) were not required by law; (b) were not to Plaintiff's benefit; (c) were not in response to a valid wage assignment or wage deduction order; and (d) were not made with the express written consent of Plaintiff, given freely at the time the deductions were made.

180.     Defendants likewise had a practice of making unlawful deductions from members of the Illinois Wage Classes without their authorization.

181.     Defendants' practice of making unlawful deductions from the earned wages of Plaintiff and the Illinois Wage Classes violated the IWPCA.

24

182.    Plaintiff and the Illinois Wage Classes are entitled to recover all the unlawful deductions made from their earned wages for a period of ten (10) years prior to the filing of this lawsuit. *See* 73 ILCS 5/13-206.

183.    As a result of Defendants' violations of the IWPCA, Plaintiff and the Illinois Wage Class, are entitled to unpaid wages and unlawful deductions, statutory damages provided under the IWPCA, reasonable attorneys' fees, and costs.

**Count 7**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Unjust Enrichment Class)**

184.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

185.    The Unjust Enrichment Class has conferred a benefit on Defendants by using their own cars to work for Defendants.

186.    Defendants are aware of and have accepted the benefit conferred on them by the Unjust Enrichment Class.

187.    It would be unjust for Defendants to be permitted to retain the benefit conferred on them by Plaintiff and the Unjust Enrichment Class without commensurate compensation.

188.    Plaintiff and the Unjust Enrichment Class are entitled to equitable restitution of the benefits conferred on Defendants as a result of the requirement that they cover some of Defendants' vehicle expenses.

**WHEREFORE,** Plaintiff Emanuel Collier prays for all of the following relief:

A.    Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly situated members of an opt-in class,

25

apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and their counsel to represent the collective action members.

B.      Unpaid minimum wages, overtime wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C.      Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

D.      Designation of Plaintiff as representative of the Illinois Wage Class and the Unjust Enrichment Class and counsel of record as Class Counsel of both Rule 23 Classes.

E.      A declaratory judgment that the practices complained of herein are unlawful under the IMWL and the IWPCA.

F.      An award of unpaid minimum wages, unpaid overtime wages, unreimbursed expenses, and unlawful deductions due under the IMWL and IWPCA.

G.      Statutory damages under the IMWL.

H.      Statutory damages under the IWPCA.

I.      An award of restitution as a result of unjust enrichment to the Unjust Enrichment Class.

J.      An award of prejudgment and post-judgment interest.

K.      An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

L.      Such other legal and equitable relief as the Court deems appropriate.

*/s/ Andrew Kimble*
Andrew P. Kimble
Biller & Kimble, LLC
8044 Montgomery Rd., Ste. 515
Cincinnati, OH 45209
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*akimble@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiff and the putative class*

## **JURY DEMAND**

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

*/s/ Andrew Kimble*
Andrew P. Kimble
